UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, *as Trustee, for the Benefit of the Holders of Benchmark 2019-B13 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2019-B13,*<br><br>                              Plaintiff,<br><br>                    -v.-<br><br>SONIAL PATEL and MONICA PATEL,<br><br>                              Defendants. | 24 Civ. 1162 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff filed two different lawsuits in two different courts against two sets of defendants for alleged breaches of agreements in a series of loan documents (collectively, the "Loan Documents," discussed further *infra*).  At issue in the instant case is the order, if any, in which the two litigations should proceed.  Plaintiff Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of Benchmark 2019-B13 Mortgage Trust Commercial Pass-Through Certificates, Series 2019-B13 ("Plaintiff" or "Lender") brings this action against Sonial Patel and Monica Patel ("Defendants" or "Guarantors"), seeking to recover for breaches of one of the Loan Documents, the Guaranty of Recourse Obligations (the "Recourse Guaranty"), executed by Defendants.  In particular, Plaintiff alleges that Defendants have failed to perform their obligations under the Recourse Guaranty, and accordingly requests that this Court, *inter alia*, award Plaintiff the full amount currently due under the Loan

Documents as well as amounts that accrue through the entry of judgment in this case.

Prior to filing this case, however, Plaintiff filed another proceeding related to the Loan Documents in the Circuit Court of Jefferson County, Alabama (the "Alabama Action"), against SJP Investment Partners, LLC ("Borrower").  In the Alabama Action, Plaintiff claimed that Borrower had defaulted on its obligations under certain of the Loan Documents and sought (i) appointment of a receiver over property associated with the Hotel Indigo Birmingham (the "Hotel"), located at 1023 20th Street South, Birmingham, Alabama 35205 (the "Property"), which serves as collateral under some of the Loan Documents; (ii) sequestration of rents, revenues, income, issues, and profits derived from the Property; and (iii) attorneys' fees incurred in pursuit of those remedies.  The state court case remains pending.

Now before this Court is Defendants' motion (i) to dismiss or stay this case pursuant to the *Colorado River* abstention doctrine in light of the Alabama Action; alternatively, (ii) to stay the case until after trial in the Alabama Action; and/or (iii) to dismiss a portion of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth in the remainder of this Opinion, the Court denies Defendants' requests that it dismiss or stay the case pursuant to the *Colorado River* doctrine or that it dismiss part of the Complaint pursuant to Rule 12(b)(6), but grants in part Defendants' request for a stay pursuant to this Court's discretionary authority.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    The Parties**

The parties to this action are a subset of the parties to the Loan Documents, namely, Lender and Guarantors.  Lender is a trust, and its trustee is Wells Fargo Bank, National Association; both are citizens of South Dakota. (Compl. ¶¶ 1, 7, 8).  Guarantors, citizens of the state of Georgia, are the guarantors of certain obligations under the Loan Documents that will be discussed further in the remainder of this section.  (*Id.* ¶¶ 3, 9).

---

[1]    This Opinion draws its facts, in part, from the Complaint ("Compl." (Dkt. #1)), and its exhibits, including the promissory note ("Note" (Compl., Ex. A)); the loan agreement ("Loan Agreement" (*id.*, Ex. B)); the guaranty of recourse obligations ("Recourse Guaranty" (*id.*, Ex. I)); the complaint in the Alabama Action ("Alabama Compl." (*id.*, Ex. J)); Borrower's state court counterclaims ("Alabama Counterclaims" (*id.*, Ex. L)); a notice of acceleration of indebtedness sent to Borrower (*id.*, Ex. M); and a demand for payment under the Recourse Guaranty (*id.*, Ex. N).

Because "[a] motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of [the] Federal Rules of Civil Procedure," *Iacovacci* v. *Monticciolo*, No. 18 Civ. 7984 (JFK), 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019), the Court also draws jurisdictional facts from the Declaration of Monica Patel in support of Defendants' motion to dismiss or stay ("Patel Decl." (Dkt. #20)), and from the exhibits appended to the Declaration of John Dana submitted in support of Defendants' motion to dismiss or stay ("Dana Decl., Ex. [ ]" (Dkt. #19)) and the Declaration of Elinor Murarova submitted in opposition to Defendants' motion to dismiss or stay ("Murarova Decl., Ex. [ ]" (Dkt. #25)).  On this point, Defendants are permitted to offer extrinsic evidence showing lack of subject matter jurisdiction on a motion brought under Federal Rule of Civil Procedure 12(b)(1). *See Nicholas* v. *Trump*, 433 F. Supp. 3d 581, 584 n.2 (S.D.N.Y. 2020) (citing *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)).  Moreover, the exhibits appended to the Dana and Murarova Declarations include filings on the docket of the Alabama Action, which filings are public records of which the Court may take judicial notice.  *See Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining that "docket sheets are public records of which" courts may take judicial notice); Fed. R. Evid. 201.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss or stay as "Def. Br." (Dkt. #21); to Plaintiff's memorandum of law in opposition to the motion to dismiss or stay as "Pl. Opp." (Dkt. #24); and to Defendants' reply memorandum of law in further support of their motion to dismiss or stay as "Def. Reply" (Dkt. #27).

### 2.    The Loan Documents

On August 30, 2019, DBR Investments Co. Limited (the "Original Lender") made a loan (the "Loan") in the principal amount of $10,710,000 to Borrower.  (Compl. ¶ 13; *see generally* Loan Agreement).  The Loan is evidenced by a promissory note dated August 30, 2019, made by Borrower to Original Lender in the original principal amount of $10,710,000 (the "Note").  (Compl. ¶ 14; *see generally* Note).  In connection with the Loan, Borrower and Original Lender also entered into a loan agreement (the "Loan Agreement"), dated as of August 30, 2019, which describes the loan transaction and various security interests securing the Loan.  (Compl. ¶ 15; *see generally* Loan Agreement).  Borrower and Original Lender also executed a Cash Management Agreement, dated as of August 30, 2019 (the "Cash Management Agreement").  (Compl. ¶ 20 & Ex. D).

The Loan is secured by a Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of August 30, 2019 (the "Mortgage").  (Compl. ¶ 21 & Ex. E).  The Mortgage was recorded on September 4, 2019, in the records of the Office of the Judge of Probate of Jefferson County, Alabama, and covers the Property.  (*Id.* ¶¶ 21-22).  Borrower also executed an Assignment of Leases and Rents (the "Assignment of Rents") to Original Lender, dated as of August 30, 2019.  (*Id.* ¶ 24 & Ex. F).  Finally, on or about August 30, 2019, Defendants executed the Recourse Guaranty.  (*Id.* ¶ 28; *see generally* Recourse Guaranty).

The Assignment of Rents was later assigned to Lender (Plaintiff here) on February 10, 2020 (the "Assignment of Assignment of Rents"). (Compl. ¶ 24 & Ex. G). The Mortgage was amended by a First Amendment to Mortgage, Assignment of Leases and Rents, and Security Agreement, dated September 22, 2021 (the "Amended Mortgage"). (*Id.* ¶ 25 & Ex. H). On the same date, Lender and Borrower also executed a Loan Modification and Restatement Agreement (the "Loan Modification Agreement"). (*Id.* ¶ 20 & Ex. C). Through those assignment documents, Lender became holder of the Note, the Loan Agreement, the Mortgage, the Amended Mortgage, the Assignment of Rents, the Assignment of Assignment of Rents, the Cash Management Agreement, the Loan Modification Agreement, and the Recourse Guaranty (collectively, the "Loan Documents"). (*Id.* ¶ 27).

### 3. Alleged Breaches and Events of Default Under the Loan Documents Resulting in Recourse Liability

As relevant here, the Note provides that "[t]he Debt shall without notice become immediately due and payable at the option of Lender upon the happening of any Event of Default." (Note 1). "Debt" is defined in the Loan Agreement as the outstanding principal balance of the Loan "together with all interest accrued and unpaid thereon and all other sums ... due to Lender from time to time in respect of the Loan under the Note, this Agreement, the Mortgage ... or any other Loan Document." (Loan Agreement § 1.1; Compl. ¶ 16). The Loan Agreement further defines "Events of Default" to include failure to pay interest and principal amounts when due. (Loan Agreement § 8.1; Compl. ¶¶ 17-18).

The Recourse Guaranty, which is governed by New York Law (*see* Recourse Guaranty § 6.3; *see also* Compl. ¶ 29), provides that:

> Each Guarantor hereby irrevocably and unconditionally guarantee[s] to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations ... as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Each Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

(Recourse Guaranty § 1.1(a); Compl. ¶ 30). The "Guaranteed Obligations" are defined to include (i) "the Parking Full Recourse Liability" (described further *infra*); (ii) "from and after the date that any Springing Recourse Event occurs, payment and performance of all of the Obligations"; and (iii) "Borrower's Recourse Liabilities." (Recourse Guaranty § 1.1(b); Compl. ¶ 32). The Loan Agreement defines "Obligations," in turn, as "Borrower's obligations for the payment of the Debt and the performance of the Other Obligations." (Loan Agreement § 1.1; Compl. ¶ 32 n.1). With regard to the payment of monetary "Obligations," the Recourse Guaranty expressly states that:

> If all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due ... Guarantors shall, immediately upon demand by Lender and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity or any other notice whatsoever, all such notices being hereby waived by Guarantors, pay . . . the amount due on the Guaranteed Obligations to Lender[.]"

(Recourse Guaranty § 1.4; Compl. ¶ 33).

In the instant action, Plaintiff claims that "Guarantors are liable for all three categories of Guaranteed Obligation." (Compl. ¶ 34). *First*, Plaintiff alleges that "Guarantors are liable under the Recourse Guaranty for the entire Debt" because "Guarantors agreed to the Parking Full Recourse Liability." (*Id.* ¶¶ 35-38). By way of background, the Loan Agreement recites that "the Obligations shall be fully recourse to Borrower and Guarantor until the occurrence of any of the Parking Satisfaction Conditions" and deems that liability the "Parking Full Recourse Liability." (Loan Agreement § 10.1). "Parking Satisfaction Conditions" include occurrences such as Borrower exercising its purchase option to purchase the "Parking Premises." (*Id.* § 1.1). Plaintiff alleges that "[n]o Parking Satisfaction Condition has occurred to date." (Compl. ¶ 36). Therefore, "the Loan remains fully recourse." (*Id.* ¶ 38).

*Second*, Plaintiff alleges that Borrower triggered the "Springing Recourse Events" defined in Sections 10.1(i) and (xii) of the Loan Agreement, also making Guarantors liable for the Debt. (Compl. ¶¶ 39-40). Section 10.1(i) provides that "a breach of the covenants set forth in Section 4.4 hereof" constitutes a "Springing Recourse Event." (Loan Agreement § 10.1(i); Compl. ¶ 39). Section 4.4 states that Borrower "shall at all times be a Special Purpose Bankruptcy Remote Entity." (Loan Agreement § 4.4.; Compl. ¶ 39 n.2). In turn, the definition of "Special Purpose Bankruptcy Remote Entity" includes several covenants to which Borrower was required to agree:

> Borrower has not incurred and will not incur any Indebtedness other than Permitted Indebtedness.

7

> Borrower has not made and will not make any loans or
> advances to any third party (including any Affiliate or
> constituent party), and has not and shall not acquire
> obligations or securities of its Affiliates.
>
> Borrower has not and will not commingle the funds and
> other assets of Borrower with those of any Affiliate or
> constituent party or any other Person.
>
> Borrower has not and will not assume or guarantee or
> become obligated for the debts of any other Person and
> does not and will not hold itself out to be responsible for
> or have its credit available to satisfy the debts or
> obligations of any other Person.

(Loan Agreement, Schedule V (d), (e), (l), and (n)).  Plaintiff alleges that

Borrower breached those covenants — and, by extension, Section 4.4 of the

Loan Agreement — in multiple ways.  In 2023, "to Lender's present knowledge,"

Borrower diverted at least $200,000 in Property rents to pay itself, the Property

manager affiliated with Borrower, "and/or other persons or entities affiliated

with Borrower."  (Compl. ¶ 41).  In addition to "diverting and misappropriating

Property revenue," Borrower also obtained additional loans without Lender's

consent and then repaid those loans with Property revenue.  (*Id.* ¶ 42).  In

doing so, Borrower (i) incurred indebtedness "other than Permitted

Indebtedness"; (ii) acquired obligations to "Affiliates"; and (iii) commingled

funds.  (*Id.* ¶ 43).  As such, Plaintiff alleges that a "Springing Recourse Event"

has occurred, and Guarantors are obligated to repay the Debt.  (*Id.* ¶ 44).

Plaintiff also alleges that Borrower triggered a separate "Springing

Recourse Event" by filing defenses and counterclaims in the Alabama Action.

(Compl. ¶ 50).  Section 10.1(xii) makes it a "Springing Recourse Event" for

Borrower to:

> in connection with any enforcement action or exercise
> or assertion of any right or remedy by or on behalf of
> Lender under or in connection with the Guaranty, the
> Note, the Mortgage or any other Loan Document, seek[]
> a defense, judicial intervention or injunctive or other
> equitable relief of any kind, or assert[] in a pleading filed
> in connection with a judicial proceeding any defense
> against Lender or any right in connection with any
> security for the Loan.

(Loan Agreement § 10.1(xii)).  Plaintiff alleges that in February 2023, Borrower defaulted under the Loan by failing to pay amounts that were then due and payable to Plaintiff and by misappropriating Hotel revenues.  (Compl. ¶¶ 45-46).  Because of those two alleged "Events of Default," Plaintiff initiated the Alabama Action.  (*Id.* ¶ 47).[2]  Borrower responded by filing numerous defenses in opposition to Lender's request for the appointment of a receiver and also by filing nine counterclaims against Lender.  (*Id.* ¶ 49).  Plaintiff alleges that those filings also constitute a "Springing Recourse Event," thereby making Guarantors liable under the Recourse Guaranty for the entire Debt.  (*Id.* ¶¶ 50-51).

*Third* and finally, Plaintiff alleges that "[i]n addition to Guarantors' Parking Full Recourse Liability and Springing Recourse Event liability, Guarantors also agreed to repay Borrower's Recourse Liabilities."  (Compl. ¶ 52).  "Borrower's Recourse Liabilities" include losses relating to:

> the misappropriation or conversion by or on behalf of
> Borrower of … any Gross Revenues (including Rents,

---

[2]    The Alabama Action is captioned: *Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of Benchmark 2019-B13 Mortgage Trust Commercial Pass-Through Certificates, Series 2019-B13, by and through Special Servicer LNR Partners, LLC* v. *SJP Investment Partners, LLC*, No. 01-CV-2023-903546.00 (Ala. Cir. Ct. Jefferson County).

> Insurance Proceeds, security deposits, advance
> deposits or any other deposits) or … any other funds
> due under the Loan Documents, including, in
> connection with any of the foregoing, by reason of
> failure to comply with <u>Section 6.1</u>[3] hereof or breach of
> the Clearing Account Agreement or the Cash
> Management Agreement … [and] any cost or expense
> incurred by Lender in connection with the enforcement
> of its rights and remedies hereunder or under any other
> Loan Document[.]

(Loan Agreement § 10.1(vi), (xv)). As discussed, Plaintiff alleges that Borrower
misappropriated Property revenue. (Compl. ¶¶ 42, 46, 54). Further, Borrower
failed to deposit all Property revenue into the Clearing Account, thereby
violating Section 6.1 of the Loan Agreement. (*Id.* ¶ 54). As a result, Plaintiff
alleges that Borrower's conduct triggered "Borrower's Recourse Liabilities" and,
once again, Guarantors' liability under the Recourse Guaranty, for "any loss,
damage, cost, expense, liability, claim or other obligation incurred by Lender
(including attorneys' fees and costs reasonably incurred) arising out of or in
connection with" the misappropriated Property revenue, and failure to deposit
Property revenue into the "Clearing Account." (Compl. ¶ 55 (quoting Loan
Agreement § 10.1)).

### 4.    Alleged Amounts Due and Owing by Guarantors

As a result of the alleged Events of Default, Plaintiff provided a notice of
acceleration to Borrower on June 16, 2023. (Compl. ¶ 56 & Ex. M). On

---

3    Section 6.1 of the Loan Agreement provides in relevant part: "Borrower shall cause all
Gross Revenue (i) to be transmitted directly by non-residential Tenants of the Property
and (ii) in the nature of sums payable by issuers of credit cards accepted at the
Property, to be transmitted directly by such issuer into a trust account (the '*Clearing
Account*')[.]"  (Loan Agreement § 6.1 (emphasis in original)).

December 19, 2023, Plaintiff sent a demand to Guarantors, seeking full repayment of the Loan.  (*Id.* ¶ 58 & Ex. N).  Plaintiff alleges that the outstanding Debt is currently "at least $11,157,924.56."  (*Id.* ¶ 57).  Neither Borrower nor Guarantors have repaid the Debt.  (*Id.* ¶¶ 58-59).

**B.    Procedural Background**

**1.    The Alabama Action**

The Alabama Action was initiated on October 4, 2023 (four months before the instant federal action was filed by Plaintiff), with the filing of the state court complaint (the "Alabama Complaint").  (Compl. ¶ 47; *see generally* Alabama Compl.).  As discussed, the Alabama Complaint alleges that Borrower defaulted under the Loan Documents in February 2023, by failing to pay Plaintiff amounts then due and payable.  (Alabama Compl. ¶ 13).  Due to the alleged default, Plaintiff accelerated the Loan, causing the entire amount due under the Loan to become due and owing from Borrower.  (*Id.*).  The Alabama Complaint further alleges that Borrower has diverted funds in contravention of the Loan Documents; repeatedly demanded that Plaintiff disburse funds so that Borrower could pay the operating expenses for the Property; and threatened to close the Hotel if those funds were not made available by Plaintiff.  (*Id.* ¶ 18).  Accordingly, Plaintiff sought receivership over the Property, sequestration of rents, and attorneys' fees incurred in pursuit of those remedies.  (*Id.* ¶¶ 29-39).

On October 12, 2023, Borrower filed an emergency motion in support of a temporary restraining order and preliminary injunction, and alternatively

sought appointment of a special master, claiming that Plaintiff was holding
$1,023,396.65 of funds belonging to Borrower and seeking that those funds be
disbursed to Borrower (Compl., Ex. K), which motion was ultimately denied
(Murarova Decl., Ex. A at 5).  On the same date, Borrower answered the
Alabama Complaint and asserted counterclaims for breach of contract, breach
of the duty of good faith and fair dealing, fraud, conversion, preliminary and
permanent injunctive relief, declaratory judgment, accounting, attorneys' fees
and costs, and punitive damages.  (*See generally* Alabama Counterclaims).  In
asserting those counterclaims, Borrower maintains that it is not in default, and
that to the extent it is in default, such default was caused by Plaintiff's material
breaches of the Loan Documents.  (*Id.* ¶ 48).  Specifically, Borrower contends
that "Plaintiff has refused to make disbursements to [Borrower] required by the
Loan Documents based upon fabricated events of default caused by Plaintiff in
an obvious bad faith scheme to avoid the deal it struck with [Borrower] and
convert this non-recourse loan into a recourse loan."  (*Id.* ¶ 2).  Further, Count
VI of the Alabama Counterclaims seeks a declaratory judgment "clarifying the
extent to which [Borrower] and the [G]uarantors of the Loan Documents are no
longer obligated to perform under the Loan Documents as a result of Plaintiff's
misconduct[.]"  (*Id.* ¶ 74).  On October 27, 2023, the Alabama Court appointed
a receiver in the Alabama Action.  (Murarova Decl., Ex. A).

> **2.    The Instant Action**

Plaintiff initiated this action by filing the Complaint on February 16,
2024.  (Dkt. #1).  The Complaint pursues a claim against Guarantors for

breach of the Recourse Guaranty. (Compl. ¶¶ 61-69). On May 3, 2024, Defendants filed a letter requesting a pre-motion conference and stating their intention to move for a stay of proceedings or dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and the *Colorado River* abstention doctrine. (Dkt. #12). In that letter, Defendants argued that the instant matter is "inextricably related" to the Alabama Action, which by that time had already proceeded to discovery. (*Id.* at 1-2). Plaintiff opposed Defendants' request to file a motion to dismiss or stay. (Dkt. #14).

On May 29, 2024, the Court held a conference to discuss the issues raised by the parties. (*See* May 29, 2024 Minute Entry). Following the conference, Plaintiff submitted an update on the Alabama Action. (Dkt. #15). The court in that action had: (i) denied Plaintiff's motion to dismiss Borrower's counterclaims against Plaintiff and (ii) sustained Plaintiff's objections to Borrower's intent to issue 14 subpoenas to third parties, after which Borrower filed new notices of intent to issue subpoenas. (*Id.*; *see also* Dana Decl., Ex. 5). The Alabama Court also set a bench trial for January 6, 2025. (Dana Decl., Ex. 6).

The parties to the instant action then filed a proposed briefing schedule for Defendants' motion to dismiss or stay (Dkt. #16), which schedule this Court granted (Dkt. #17). On July 16, 2024, Defendants filed their motion to dismiss or stay this case. (Dkt. #18). On August 21, 2024, Plaintiff filed its opposition to the motion to dismiss or stay. (Dkt. #24). On September 6, 2024,

Defendants filed their reply memorandum of law in further support of their motion to dismiss or stay.  (Dkt. #27).

On the same date the reply was filed, Plaintiff provided another letter update on the status of the Alabama Action, which update indicated that the Alabama Action had been stayed pending disposition of an appeal filed by the receiver in that action.  (Dkt. #26).  The order staying the Alabama Action also vacated the scheduling order that had set a trial for January 6, 2025.  (*Id.*).  As of the date of this Opinion, the Supreme Court of Alabama had not yet decided the appeal.

## DISCUSSION

Defendants argue that this Court should decline jurisdiction over this case pursuant to the *Colorado River* abstention doctrine (Def. Br. 4-13), or in the alternative, stay this action pursuant to its inherent discretionary authority (*id.* at 13-17).  Further, to the extent the Court retains jurisdiction over the action, Defendants ask it to dismiss part of Plaintiff's Complaint for failure to state a claim.  (*Id.* at 18-21).  The Court sets out the legal standards for and assesses each of these arguments in turn.

### A.    The Court Declines to Stay the Case Pursuant to the *Colorado River* Abstention Doctrine

#### 1.    Applicable Law

"[F]ederal courts have a virtually unflagging obligation to exercise their jurisdiction."  *Yu* v. *Gao*, No. 24 Civ. 3902 (AMD) (JRC), 2025 WL 80658, at *2 (E.D.N.Y. Jan. 13, 2025) (quoting *Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)).  But that

"duty is not … absolute." *Quackenbush* v. *Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).  A federal court may decline to exercise its jurisdiction in "'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest[.]"  *Id.* (citation omitted).

"In the seminal case of *Colorado River Water Conservation District* v. *United States*, the Supreme Court set forth what is now referred to as the *Colorado River* abstention doctrine," *Thompson* v. *Daxor Corp.*, No. 23 Civ. 8272 (KPF), 2024 WL 1484192, at *2 (S.D.N.Y. Apr. 5, 2024), under which a federal court may abstain from exercising jurisdiction "in situations involving the contemporaneous exercise of concurrent jurisdiction [by a federal and state court]," *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800, 817 (1976).  However, the existence of a contemporaneous state court action alone is not sufficient for abstention.  "In deciding whether to abstain under *Colorado River*, a district court must first determine whether the federal and state court cases are parallel."  *U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A.* v. *E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) (summary order) (citing *Nat'l Union Fire Ins. Co.* v. *Karp*, 108 F.3d 17, 22 (2d Cir. 1997)).  "Federal and state proceedings are parallel for purposes of abstention when the two proceedings are 'essentially the same' — when there is an identity of parties, and the issues and relief sought are the same."  *Id.* (quoting *Nat'l Union Fire*, 108 F.3d at 22).

If a court determines that the actions are parallel, it must then proceed to consider six factors in determining whether ultimately to abstain from

exercising jurisdiction. *U.S. Bank Nat'l Ass'n*, 804 F. App'x at 107. The factors

are:

> [i]    the order in which the courts assumed
>        jurisdiction over property relating to the subject
>        matter of the case,
>
> [ii]   the inconvenience of the federal forum,
>
> [iii]  the desirability of avoiding piecemeal or
>        duplicative litigation,
>
> [iv]   the order in which the courts obtained
>        jurisdiction,
>
> [v]    whether federal or state law governs, and
>
> [vi]   whether the state forum would be adequate to
>        protect the plaintiff['s] rights.

*Kamerman* v. *Steinberg*, 681 F. Supp. 206, 213 (S.D.N.Y. 1988). The Court now

considers whether the facts in the present case meet the requirements for

*Colorado River* abstention.

### 2.    Analysis

The Court begins with a high-level summary of the parties' arguments,

and then presents them at a more granular level. In sum, Defendants argue

that the instant action is parallel with the Alabama Action, because the two

actions involve the same parties, subject matter, and relief requested. (Def.

Br. 5-9). In response, Plaintiff contends that *none* of those requirements is

met, and, further, that the Alabama Action will not moot or dispose of all

claims in this case, and thus the actions are not parallel. (Pl. Opp. 6-11).

*First*, Defendants claim that this case and the Alabama Action are

"substantially the same" because "Plaintiff is the same in both cases" and

"Defendants in this [a]ction are co-owners and guarantors of the defendant in the Alabama Action." (Def. Br. 6).  Plaintiff disagrees, arguing that "there can be no dispute that the parties to this case are different from the parties to the Alabama Action" because "Borrower is not a party to this case, and Guarantors are not parties to the Alabama Action." (Pl. Opp. 6).

*Second*, Defendants argue that "both actions involve the same subject matter" because "Plaintiff's claims in both forums are based on the same allegations that [Borrower is] in default of the same Loan [Documents] due to certain breaches of the Loan [Documents]." (Def. Br. 7).  Plaintiff concedes that "portions of [its] Complaint in this case are related to Borrower's [alleged] monetary defaults under the Loan[.]" (Pl. Opp. 9).  However, Plaintiff contends that the two cases concern different issues because (i) this action seeks to enforce the Guaranty and the Alabama Action "seeks to enforce Lender's right to a receiver under the other Loan Documents"; (ii) Plaintiff alleges in this suit that Guarantors are liable for all amounts due under the Loan, not just because of Borrower's monetary default, but *also* because Borrower triggered other "Springing Recourse Events"; and (iii) only the Alabama Action seeks a receivership over the Property.  (*Id.* at 8-9).

*Third*, Defendants argue that "the relief requested in both actions is the same" because

> if Plaintiff were successful in this [a]ction and obtained a judgment against the Guarantors, Plaintiff would then either collect the judgment directly from the Guarantors, or if the Guarantors could not satisfy the judgment, Plaintiff could then foreclose on the [] Hotel, [Borrower]'s 'most valuable asset.'  Moreover,

> Defendants would also assert many of the same counterclaims and request similar relief as [Borrower] in the Alabama Action, including a finding that they are released from any liabilities under the Loan [Documents] because of Plaintiff's misconduct pursuant to New York law.

(Def. Br. 7-9). In contrast, Plaintiff claims that the relief requested in the two actions is different. (Pl. Opp. 10). After all, in the Alabama Action, Plaintiff is seeking the appointment of a receiver, and in this action, Plaintiff is seeking a monetary judgment against Guarantors. (*Compare* Complaint ¶¶ 1, 61-69, *with* Alabama Compl. ¶¶ 29-39).

The Court recognizes that the two actions involve, in part, the same underlying Loan Documents and emanate, in part, from some of the same alleged breaches of those Loan Documents by Borrower. Specifically, both complaints allege that Borrower failed to pay amounts owed in February 2023, diverted and misappropriated $200,000 in funds from the Property, and failed to deposit funds into a clearing account. (Compl. ¶¶ 41-42, 45-46, 52-54; Alabama Compl. ¶¶ 13-17). But here, "there is not otherwise an identity of parties or claims sufficient to find that the actions are parallel." *Dalzell Mgmt. Co.* v. *Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 598 (S.D.N.Y. 2013).

Plaintiff is correct that the parties in the two actions need not be identical for the cases to be parallel. (Pl. Opp. 8 (citing *Pappas Harris Cap., LLC* v. *Bregal Partners, L.P.*, No. 20 Civ. 6911 (VEC), 2021 WL 3173429, at *6 (S.D.N.Y. July 27, 2021)). Rather, parties may be found to be substantially the same where "the interests of the parties in each case are congruent," in that

"they would benefit from the same outcome." *Pappas Harris Cap.*, 2021 WL
3173429, at *5 (internal quotation marks omitted).  However, the instant
matter is distinguishable from other cases in this Circuit where courts have
found that the parties were substantially the same and that the state and
federal actions therein were parallel.  For instance, in *JPMorgan Chase Bank,
N.A.* v. *Avara US Holdings LLC*, a case on which Defendants heavily rely in
arguing for abstention, the state and federal actions arose from the same
events, and in both actions, the plaintiff sought recovery under *both* the loan
and guaranty at issue for the same entity's breaches.  No. 23 Civ. 7145 (JGK),
2024 WL 709068, at *5 (S.D.N.Y. Feb. 21, 2024); *see also U.S. Bank Nat'l
Ass'n*, 804 F. App'x at 107 (upholding district court determination that two
proceedings were parallel because both actions were "centered on the same
parties'" loan agreement "and whether either party breached its obligations
under that agreement"); *Cong. Talcott Corp.* v. *Roslin*, No. 95 Civ. 7698 (LAP),
1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996) (finding that the state and
federal actions were parallel where it was undisputed "that the exact same
events underlie both actions," plaintiff "suggested no substantive or significant
procedural differences" between the two cases, and plaintiff had simply
"isolated one of the two individual guarantors" in federal court).

The Alabama Action is centered on whether Borrower defaulted under
the Loan Agreement, while the instant action is centered on whether
Guarantors breached the Recourse Guaranty.  To be sure, several of Borrower's
alleged defaults are at issue in both actions (Compl. ¶¶ 41-42, 45-46, 52-54;

Alabama Compl. ¶¶ 13-17), but in the federal action, Plaintiff also claims that Guarantors breached the Recourse Guaranty because another Springing Recourse Event occurred when Borrower mounted a defense in the Alabama Action (Compl. ¶¶ 39, 49-50, 65-66). Therefore, the issues in the two actions are not the same. It is also unclear whether Guarantors would automatically "benefit from the same outcome" — namely, a finding that Borrower did not default under the Loan Agreement by failing to make payment when due or improperly managing funds — because this Court could still possibly find Guarantors liable for the full Loan based on Borrower's defense in the Alabama Action. Therefore, resolution of Plaintiff's claims in the Alabama Action would not necessarily dispose of all its claims in this case.

Moreover, the relief requested in the two actions is not the same. In the Alabama Action, Plaintiff seeks appointment of a receiver over the Property and in this action, Plaintiff seeks a monetary judgment against Guarantors. (*Compare* Complaint ¶¶ 1, 61-69, *with* Alabama Compl. ¶¶ 29-39). That relief is not identical, nor is it even "substantially the same." *Avara*, 2024 WL 709068, at *6. On this point, this Court again distinguishes the present case from *Avara.* In *Avara*, a federal action, the plaintiff sought a declaratory judgment regarding its right to foreclose on and/or exercise proxy rights in shares in several subsidiaries of the defendant, including a subsidiary called Avara Norman; in the related state action, the plaintiff sought foreclosure and/or the appointment of a receiver over Avara Norman's real estate. *Id.* The district court found that the relief in both actions was "substantially the same"

because either would have given the plaintiff control over Avara Norman, "apparently the most valuable asset of" the defendant. *Id.* Here, the appointment of a receiver over the Property so that the assets of the Property are not dissipated, is different from a foreclosure, and certainly different from a judgment for the amount due under the Recourse Guaranty. *See Bulson* v. *Town of Brunswick*, No. 24 Civ. 503 (LEK) (DJS), 2025 WL 743950, at *9 (N.D.N.Y. Mar. 7, 2025) (finding no parallelism where state court action sought a judgment for equitable and declaratory relief and federal action sought monetary damages).

Further, the Alabama Action is unlikely to resolve all issues concerning the Recourse Guaranty, because Plaintiff's claims in that action do not include those regarding the "Springing Recourse Event" based on the filing of a defense or counterclaims, and because Guarantors are not parties to the state action. *See CP III Rincon Towers, Inc.* v. *Cohen*, No. 10 Civ. 4638 (DAB), 2011 WL 651434, at *3-4 (S.D.N.Y. Feb. 16, 2011) (finding that actions were not parallel where the defendant in the federal action was not a party to the state court action and the claims in the state court action were not brought pursuant to — and thus were unlikely to resolve issues concerning — the guaranty at issue in the federal suit). Accordingly, the Court finds that this action and the Alabama Action are not parallel and that abstention under the *Colorado River* doctrine is unwarranted.

21

**B.**    **The Court Will Exercise Its Discretion to Stay the Case, At Least in the Short Term**

**1.**    **Applicable Law**

There remain, however, other paths to a stay. "[E]ven where a Court may not abstain under *Colorado River*, it may, 'in the exercise of its discretion,' 'stay[ ] proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views.'" *Chartis Seguros Mexico, S.A. de C.V.* v. *HLI Rail & Rigging, LLC*, No. 11 Civ. 3238 (JSR), 2011 WL 13261585, at *2 (S.D.N.Y. Nov. 3, 2011) (quoting *Giulini* v. *Blessing*, 654 F.2d 189, 193 (2d Cir. 1981)); *accord Windward Bora, LLC* v. *Bank of N.Y. Mellon as Tr. for Certificateholders of Cwalt, Inc., Alternative Loan Tr. 2007-5CB, Mortg. Pass-Through Certificates, Series 2007-5CB*, No. 19 Civ. 858 (RPK) (RML), 2020 WL 7042761, at *7 (E.D.N.Y. Nov. 30, 2020). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Thompson*, 2024 WL 1484192, at *3 (quoting *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (internal quotation marks omitted)). That power may be used to "allow resolution of a similar cause of action pending in state court." *De Carvalhosa* v. *Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982) (quoting *Clarkson Co.* v. *Shaheen*, 544 F.2d 624, 629 (2d Cir. 1976)).

The party seeking the stay has the burden to establish its need. *See Clinton* v. *Jones*, 520 U.S. 681, 708 (1997). In deciding whether to stay a case

where there is a pending state court action, courts consider the following

factors:

> [i]    considerations of comity;
>
> [ii]   promotion of judicial efficiency;
>
> [iii]  adequacy and extent of relief available in the alternative forum;
>
> [iv]   identity of parties and issues in both actions;
>
> [v]    likelihood of prompt disposition in the alternative forum;
>
> [vi]   convenience of the parties, counsel and witnesses; and
>
> [vii]  possibility of prejudice to a party as the result of the stay.

*Chartis*, 2011 WL 13261585, at *2 (quoting *Lindgren*, 546 F. Supp. at 230); *cf.*

*Readick* v. *Avis Budget Grp., Inc.*, No. 12 Civ. 3988 (PGG), 2014 WL 1683799,

at *2 (S.D.N.Y. Apr. 28, 2014) (presenting analogous stay factors, citing *Kappel*

v. *Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).  The Court next applies

those factors to the facts at hand and finds that a stay of this action is

warranted, at least in the short term.

### 2.    Analysis

The first factor, considerations of comity, weighs in favor of a stay

because "all of the issues [in both the federal and state actions] involve

questions of state law," *Lindgren*, 546 F. Supp. at 230, arising out of the same

set of Loan Documents.  Similarly, the second factor, promotion of judicial

efficiency, strongly supports a stay.  The Alabama Court is considering whether

Borrower defaulted under the Loan Agreement by failing to pay amounts owed

when due, misappropriating funds, and failing to put funds into a clearing account (Alabama Compl. ¶¶ 13-17), and, as part of Borrower's counterclaims, whether, *inter alia*, Plaintiff has materially breached the Loan Documents or acted in bad faith in ways that might excuse or relieve Borrower of the obligations underlying purported defaults (Alabama Counterclaims ¶¶ 46-48). The Alabama Court's decision on those issues would very likely inform this Court's determination of the claims in this action. At the very least, it could narrow the alleged "Springing Recourse Events" that this Court considers in determining whether Guarantors have breached the Recourse Guaranty. *See Chartis*, 2011 WL 13261585, at *2 (finding that a stay was appropriate where certain findings in the state court would likely resolve issues in the federal action).

The third factor, adequacy and extent of relief available in the alternative forum, is neutral. While Plaintiff's claim for breach of the Recourse Guaranty is not before the Alabama Court, this Court may be able to offer that relief, if it is warranted, after the Alabama Court determines whether Borrower defaulted under the Loan Agreement and whether any such default was excused due to Plaintiff's conduct.

Turning to the fourth factor, the Court finds that although the identity of the parties and issues in the two actions is not complete enough to warrant *Colorado River* abstention, it does weigh in favor of a stay. Plaintiff is the same in both actions, and here, Defendants are the guarantors and co-owners of Borrower. *See Chartis*, 2011 WL 13261585, at *2 (state action included

current or former parties to the federal case); *see also Daxor*, 2024 WL 1484192, at \*5 (federal action included same parties and same cause of action, with one additional defendant).  Further, as discussed, some of the issues in the Alabama Action, including Borrower's alleged defaults and Plaintiff's alleged misconduct, will likely impact the disposition of this action.

The fifth factor, likelihood of prompt disposition in the alternative forum, is neutral.  Since the Alabama Action was filed in October 2023, the Alabama Court has decided multiple motions filed by the parties, including Plaintiff's motion to dismiss Borrower's counterclaims.  (*See* Dana Decl., Ex. 5).  The Alabama Action has proceeded to discovery and was set for trial in January 2025.  (*See id.*, Ex. 6 (scheduling order)).  While those facts counsel in support of a stay in this action, the Court also acknowledges that the Alabama Action is stayed pending an appeal from the Alabama Court's July 21, 2024 order.  (*See* Dkt. #26-1 (order vacating scheduling order)).[4]  Therefore, while the Alabama Court has expediently decided motions in that case, the pending appeal has slowed progress in the alternative forum.  Still, based on the state court record, the Court finds that the Alabama Action has otherwise been moving quickly, and because the trial had already been scheduled prior to the appeal, the case

---

[4]    The Alabama Court's July 21, 2024 order clarified that an earlier order denied the receiver's requested relief of payment of all attorneys' fees and costs, and directed the receiver to pay vendor expenses and other expenses of the Hotel, including pre-receivership expenses of the Hotel.  *See Wells Fargo Bank, National Association, as Trustee, for the Benefit of the Holders of Benchmark 2019-B13 Mortgage Trust Commercial Pass-Through Certificates, Series 2019-B13, by and through Special Servicer LNR Partners, LLC* v. *SJP Investment Partners, LLC*, No. 01-CV-2023-903546.00 (Ala. Cir. Ct. Jefferson County), Dkt. #411.

will likely proceed to trial soon after the appeal is decided.  If it does not, this Court can lift the stay.  *See Chartis*, 2011 WL 13261585, at *2 (staying the federal action for six months based on defendant's representation that the state proceedings would likely proceed to trial within the next few months).

The sixth factor, convenience of the parties, counsel, and witnesses, weighs slightly in favor of a stay.  The relevant property is in Alabama and many of the witnesses who can testify regarding the parties' respective performances under the Loan Documents live in Georgia, Alabama, or Florida. (Compl. ¶ 22; Patel Decl. ¶ 20).  Guarantors live in Georgia, which is closer to Alabama than New York.  (Patel Decl. ¶¶ 10-13).  However, the Court acknowledges that Guarantors' counsel in this action is located in New York (*id.* ¶ 18), and Plaintiff's counsel in this action is located in Chicago.

Finally, regarding the seventh factor, the possibility of prejudice as a result of the stay, the Court finds that a brief stay will not prejudice Plaintiff. In fact, Plaintiff has not even argued that such a stay would prejudice it in its opposition.  (*See* Pl. Opp. 18-21 (listing prejudice as one of the factors to consider in determining whether to stay a federal proceeding but offering no facts to support the application of that factor in this matter)).  Having applied the seven *Lindgren* factors to this case, the Court finds that a stay is warranted and issues a discretionary stay of the proceedings in this action — at least in the short term — to permit resolution of the Alabama Action.  *See Lafont* v. *Phillip*, No. 21 Civ. 3739 (JMW), 2022 WL 2132992, at *7 (E.D.N.Y. June 14,

2022) (declining to abstain under *Colorado River* but granting a discretionary stay pending resolution of a state action).

## C.    The Court Denies Defendants' Partial Motion to Dismiss

Finally, Defendants argue that if this Court retains jurisdiction over the action, it should nonetheless dismiss Plaintiff's claim for breach of the Recourse Guaranty insofar as it is premised on a purported breach of Section 10.1 of the Loan Agreement.  (Def. Br. 18).  The Court briefly lays out the Rule 12(b)(6) standard, and then considers Defendants' argument.

### 1.    Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

### 2.    Analysis

As discussed, Section 10.1(xii) makes it a "Springing Recourse Event" for Borrower to:

> in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender under or in connection with the Guaranty, the Note, the Mortgage or any other Loan Document, seek[]

> a defense, judicial intervention or injunctive or other
> equitable relief of any kind, or assert[] in a pleading filed
> in connection with a judicial proceeding any defense
> against Lender or any right in connection with any
> security for the Loan.

(Loan Agreement § 10.1(xii)).  Defendants argue, however, that Plaintiff cannot

rely on that section in claiming a breach of the Recourse Guaranty because

that provision "is unenforceable under New York public policy."  (Def. Br. 18-

19).  Specifically, Defendants argue that this provision constitutes "a waiver

clause that attempts to categorically bar [Borrower and Guarantors] from

defending against [] Lender's conduct — including fraudulent and bad-faith

conduct."  (*Id.* at 19).  Plaintiff counters that the provision is a "Springing

Recourse Event," not a waiver.  (Pl. Opp. 21-22).  This Court agrees.

Courts applying New York law have upheld similar springing recourse

events.  *See, e.g.*, *Letchworth Realty, LLC* v. *LLHC Realty, LLC*, No. 15 Civ. 6680

(FPG), 2020 WL 5361666, at *5 (W.D.N.Y. Sept. 8, 2020) (recognizing that a

springing recourse event had occurred when borrower contested the

foreclosure action); *NCCMI, Inc.* v. *Bersin Properties, LLC*, 208 N.Y.S.3d 27, 31-

34 (1st Dep't 2024) (enforcing a springing recourse event that stated that the

debt would be become fully recourse if borrower or guarantor "contest[ed] or in

any way interfere[d] with … any foreclosure action … or with any other

enforcement of Lender's rights … (whether by … bringing any counterclaim,

claiming any defense[)]").

Further, even if the provision did constitute a waiver, "[u]nder New York

law, parties to a contract may agree to broad waivers of defenses and

28

counterclaims as long as the agreement was entered into voluntarily."
*Overseas Priv. Inv. Corp.* v. *Furman*, No. 10 Civ. 7096 (RJS), 2012 WL 967458,
at *7 (S.D.N.Y. Mar. 14, 2012).  That includes waiver of the right to assert
counterclaims and affirmative defenses, to the extent they are not based upon
fraud or the plaintiff's violation of its duty of good faith.  *Id.*  For all of these
reasons, the Court denies Defendants' motion to dismiss Plaintiff's claim for
breach of the Recourse Guaranty based on the Springing Recourse Event
defined in Loan Agreement Section 10.1(xii).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and/or stay
this action is GRANTED IN PART and DENIED IN PART.  Pursuant to its
discretionary authority, the Court STAYS the instant suit pending further order
of the Court.  However, the parties are cautioned that the Court does not
contemplate staying this case indefinitely.  The parties are ORDERED to
provide the Court with a status update within five business days of any
significant event occurring in the Alabama Action or September 10, 2025,
whichever is earlier.

Further, the Court DENIES Defendants' motion to dismiss insofar as it
requests that the Court dismiss part of the Complaint pursuant to Rule
12(b)(6).

The Clerk of Court is directed to terminate the pending motion at docket entry 18.

SO ORDERED.

Dated:    March 18, 2025
          New York, New York

KATHERINE POLK FAILLA
United States District Judge